

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

    -v-

TYRONE PENNICK,

          Defendant.

17-CR-15-RJA-MJR
REPORT, RECOMMENDATION,
AND ORDER

---

This case has been referred to the undersigned by the Hon. Richard J. Arcara pursuant to 28 U.S.C. §636(b)(1) for all pre-trial matters and to hear and report upon dispositive motions. (Dkt. No. 3).

## BACKGROUND

On January 19, 2017, a federal grand jury in the Western District of New York returned a four count Indictment against Tyrone Pennick and Geneva Smith. (*See* Dkt. No. 1). Pennick is charged in all four counts: Count 1 (conspiracy to possess with intent to distribute, and to distribute, cocaine); Count 2 (possession of cocaine with intent to distribute); Count 3 (maintaining a drug-involved premises); and Count 4 (penalty for an offense committed while on release pursuant to 18 U.S.C. §3147). (*Id.*). Presently before the Court are Pennick's pre-trial motions: (1) to suppress statements; (2) for discovery of the confidential informant testimony given in support of the search warrant application for the searches of 489 Emerson Drive and a white Jeep Commander[1]; (3) for discovery of documents and information relating to the search warrants for six cell phones seized from

---

[1] Pennick actually filed separate discovery motions regarding the search warrant application for the searches of 489 Emerson Drive and the Jeep Commander. However, because the same application was used for both searches, the Court will treat Pennick's motions as a single motion.

489 Emerson Drive; (4) to suppress identification evidence; (5) for notice of the government's intent to use evidence at trial; (6) for discovery; (7) for disclosure of evidence pursuant to Federal Rules of Evidence 404(b) and 609; (8) for disclosure of Jencks Act materials; (9) for leave to join in his co-defendant's motions; and (10) for leave to file other motions. (Dkt. No. 22). The government responded to Pennick's motions and filed its own motion for reciprocal discovery. (Dkt. No. 25). The Court heard oral argument on all of the foregoing motions on February 5, 2018. (Dkt. No. 58).

## DISCUSSION

The Court will address Pennick's motion to suppress statements before turning to his non-dispositive pre-trial motions and the government's motion for reciprocal discovery.

I.   *Motion to Suppress Statements*

Pennick moves to suppress his post-arrest statements on the basis that he purportedly never waived his *Miranda* rights. The Court held an evidentiary hearing on the motion on August 15, 2017 during which Chief DJ Granville of the Erie County Sheriff's Office testified on behalf of the government and the Court received Government Exhibits ("Govt. Exs.") 1 and 7 into evidence. (Dkt. No. 35). Pennick did not call any witnesses. The parties thereafter filed post-hearing briefs (Dkt. Nos. 42, 57), and, as already noted, appeared for oral argument on February 5, 2018 (Dkt. No. 58). After considering the evidence adduced at the hearing, the submissions of the parties, and argument from counsel, it is recommended that Pennick's motion to suppress statements be denied in its entirety.

A. *Findings of Fact*

On November 16, 2016, Detective Adam Imiolo of the Erie County Sheriff's Office obtained a state court search warrant to search 489 Emerson Drive in Amherst, New York and a white Jeep Commander for cocaine, cash, and other items. (Tr. 5, 17; Dkt. No. 22-1 (Warrant Application)).[2]  Chief Granville[3] and five or six other officers from the Erie County Sheriff's Office executed the warrant the next day. (Tr. 5, 18). While executing the warrant, the officers located Pennick inside the residence, placed him in handcuffs, and detained him in the living room. (Tr. 6-7, 18-19). Minutes later, Chief Granville advised Pennick of his *Miranda* rights using a "Miranda rights app" on his iPhone. (Tr. 7, 19; Govt. Ex. 1). Chief Granville advised Pennick that he has the right to remain silent, that anything he says can and will be used against him in a court of law, that he has the right to talk to a lawyer and have a lawyer with him while he is being questioned, that if he cannot afford a lawyer one will be appointed to represent him free of charge before any questioning if he wishes, and that he may decide at any time to exercise these rights and not answer any questions or make any statements. (Tr. 9; Govt. Ex. 1). After Chief Granville read Pennick his *Miranda* rights, he asked Pennick if he understood his rights. (Tr. 9; Govt. Ex. 1). Pennick said that he did. (Tr. 10). When Chief Granville asked Pennick if he had "been read [his] rights before," Pennick answered "yes." (Tr. 11). Chief Granville also asked Pennick, "[h]aving these rights in mind, do you wish to talk to us now?," but he does not recall whether or not Pennick answered this question. (Tr. 10-11,

---

[2]   References to "Tr." are to the transcript of the August 15, 2017 evidentiary hearing. (Dkt. No. 38).
[3]   Chief Granville was a senior detective at the Erie County Sheriff's Office during the events in question. He was promoted to Chief of Narcotics sometime thereafter. (Tr. 4-5).

21). The officers then removed Pennick from the residence and placed him in a patrol car so that they could search the residence. (Tr. 11-12).

After the search was complete, one of the officers on the scene transported Pennick to the Erie County Sheriff's Office's drug unit in downtown Buffalo. (Tr. 12-13). Chief Granville and Pennick had a ten to fifteen minute "casual conversation" in the "secure lockup area" of the drug unit during which Chief Granville informed Pennick that the officers found a large amount of cash inside the residence while executing the search warrant. (Tr. 12-14, 23, 29, 31). Pennick responded that it is not illegal to possess large sums of money and that the cash "came from the IRS." (Tr. 13-14, 31). Pennick also mentioned something about a "clothing line." (Tr. 14, 28-29, 31). "[O]ver an hour" had passed from the moment Chief Granville read Pennick his rights and the time Pennick made these statements. (Tr. 12, 22). At no time did Pennick ask Chief Granville for an attorney. (Tr. 15).

The Court finds Chief Granville to be a credible witness. Although the Chief could not recall whether or not Pennick answered his question, "[h]aving these [*Miranda*] rights in mind, do you wish to talk to us now?," the Court believes that he testified about the events in question to the best of his recollection.

### B. *Conclusions of Law*

A suspect in custody must be advised prior to any questioning "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). "Even absent the accused's invocation of [his *Miranda*

rights], the accused's statement during a custodial interrogation is inadmissible at trial unless the prosecution can establish that the accused 'in fact knowingly and voluntarily waived [*Miranda*] rights' when making the statement." *Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010) (second alteration in original) (quoting *North Carolina v. Butler*, 441 U.S. 369, 373 (1979)). The government must prove waiver by a preponderance of the evidence. *See United States v. Gaines*, 295 F.3d 293, 297 (2d Cir. 2002). Here, the parties do not dispute that Pennick made his statements to Chief Granville in the context of a custodial interrogation after having been read his *Miranda* rights. The issue before the Court is thus whether Pennick waived his *Miranda* rights when making the statements.[4]

"The waiver inquiry 'has two distinct dimensions': waiver must be 'voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception,' and 'made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *Berghuis*, 560 U.S. at 382-83 (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). "[W]aiver need not be express." *United States v. Plugh*, 648 F.3d 118, 127 (2d Cir. 2011). So long as "the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." *Berghuis*, 560 U.S. at 384.

The government has established that Pennick knowingly and voluntarily waived his *Miranda* rights when giving his statements to Chief Granville. Prior to making the statements, Pennick was read his rights and informed Chief Granville that he understood

---

[4] Pennick does not argue that he invoked his *Miranda* rights, and there is no evidence in the record to support such a finding.

them. Pennick is no stranger to *Miranda* warnings, as he informed Chief Granville that he had been read his rights before. Approximately one hour after Pennick was read his *Miranda* rights, he and Chief Granville had a brief, "casual conversation" at the Erie County Sheriff's Office's drug unit during which Pennick made the statements that he now seeks to suppress. Chief Granville did not physically threaten or harm Pennick, coerce him into making the statements, or promise him anything in return for the statements. (Tr. 14-15); *see Plugh*, 648 F.3d at 128 (finding voluntary waiver of *Miranda* rights where the defendant was not coerced, threatened, or made any type of promise such that his will was overborne). Although Pennick made the statements over an hour after he was read his *Miranda* warnings, "[c]ourts have consistently upheld the integrity of *Miranda* warnings even in cases where 'several hours' have elapsed between the reading of the warning and the interrogation." *United States v. Frankson*, 83 F.3d 79, 83 (4th Cir. 1996) (quoting *United States v. Diaz*, 814 F.2d 454, 461 (7th Cir. 1987)). Pennick does not cite any authority to the contrary. Accordingly, because Pennick was advised of his *Miranda* rights and informed Chief Granville that he understood his rights, the fact that he subsequently made uncoerced statements to Chief Granville conclusively demonstrates that he knowingly and voluntarily relinquished his *Miranda* rights. *See Plugh*, 648 F.3d at 127 ("[W]aiver need not be express."). It is thus recommended that Pennick's motion to suppress statements be denied.

II. *Motion for Discovery of Confidential Informant Testimony*

Pennick seeks disclosure of the identity of the confidential informant and the sealed, in camera testimony given by the informant in support of the state court search warrant application to search 489 Emerson Drive and a white Jeep Commander for

cocaine, cash, and other items. (See Dkt. No. 22 ¶¶4-28; Dkt. No. 22-1 (Warrant Application)). The government gave the Court, but not the defense, a disk containing an audio recording of the informant's testimony to the state court judge who issued the warrant and handwritten notes taken by the judge.[5] Pennick states that he needs to review the informant's testimony to determine whether or not to challenge the warrant for lack of probable cause. (Dkt. No. 22 ¶¶15-17, 26). The government opposes producing the informant's testimony, arguing: (1) Pennick has not demonstrated standing to challenge the searches of 489 Emerson Drive and the Jeep Commander for lack of probable cause; (2) the state court judge properly found probable cause for the searches; (3) the good faith exception applies with regard to the searches; and (4) Pennick is not entitled to learn the identity of the informant under *Roviaro v. United States*. (Dkt. No. 25 at 4-8). In addition, at oral argument, the government argued that there is an "inherent" risk when a confidential informant's identity and testimony are divulged. Pennick's motion for disclosure is denied because the government's interest in non-disclosure outweighs his need to review the informant's testimony for probable cause. *See United States v. Saltares*, 301 F. Supp. 2d 305, 307 (S.D.N.Y. 2004) (denying disclosure of unredacted search warrant application where the government's interest in non-disclosure was high and the defendant's need for disclosure was low).

Disclosing the search warrant application will allow Pennick and other individuals to identify the confidential informant, thus jeopardizing his or her safety. *See id.* (denying defendant's request for unredacted search warrant application where "[t]he Court [was] unable to disagree with the Government's assertions that the redacted portions of the

---

[5] The Court has filed the disk and handwritten notes under seal in connection with the instant Report, Recommendation, and Order.

[application] would provide sufficient information to [enable the defendant] to identify the informant"); *see also United States v. Montalvo*, No. 08-CR-004S, 2009 WL 595998, at *7 (W.D.N.Y. Mar. 6, 2009) (denying defendant's request for unredacted search warrant application because the application contained facts concerning an ongoing investigation). Indeed, the informant stated during his or her in camera testimony that she or he fears for his or her safety should his or her identity be divulged. Detective Imiolo similarly stated in the written search warrant application that "disclosure of the cooperating source's identity would jeopardize the cooperating source's safety or usefulness at a later date." (Dkt. No. 22-1 at 2).

To compare, Pennick does not have a strong interest in reviewing the in camera testimony because he lacks standing to challenge the searches authorized by the warrant. *See United States v. Wilson*, No. 15-CR-00142-EAW-MJR, 2017 WL 1456984, at *7 (W.D.N.Y. Apr. 24, 2017) ("Further weighing against unsealing of the affidavit is the Court's finding . . . that defendants have not sufficiently established standing to challenge the searches . . . ."). A defendant seeking to suppress evidence must demonstrate that he had a reasonable expectation of privacy in the location or items searched. *See Rakas v. Illinois,* 439 U.S. 128, 143 (1978). "[The] defendant must demonstrate that he *himself* exhibited an actual subjective expectation of privacy in the area searched, and that this subjective expectation is one that society is willing to accept as reasonable." *United States v. Fields*, 113 F.3d 313, 320 (2d Cir. 1997). The defendant can meet this burden "only by sworn evidence, in the form of an affidavit or testimony, from the defendant or someone with personal knowledge." *United States v. Hemingway*, No. 05-CR-6108L, 2007 WL 499470, at *9 (W.D.N.Y. Feb. 13, 2007) (quoting *United States v. Montoya-*

*Eschevarria,* 892 F. Supp. 104, 106 (S.D.N.Y.1995)). Here, Pennick has not submitted sworn testimony from someone with personal knowledge to demonstrate that he exhibited both a subjective and reasonable expectation of privacy in 489 Emerson Drive and the Jeep Commander. He thus lacks standing to challenge the searches of the residence and vehicle. *See id.*

Even if Pennick had standing to challenge the searches, the Court's in camera review of the informant's testimony confirms that the warrant is in fact supported by probable cause. "Probable cause is 'a practical, commonsense decision whether, given all the circumstances set forth in the affidavit . . ., including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Canfield,* 212 F.3d 713, 718 (2d Cir. 2000) (alteration in original) (quoting *Illinois v. Gates,* 462 U.S. 213, 238 (1983)). "In considering the quantum of certainty required, it is only a probability, and not a prima facie showing of criminal activity, that is the standard of probable cause." *United States v. Travisano,* 724 F.2d 341, 346 (2d Cir. 1983). Where, as here, the Court is reviewing the probable cause determination of another court, "[the] reviewing court must accord substantial deference to the finding of an issuing judicial officer that probable cause exists," asking solely "whether the issuing judicial officer had a substantial basis for the finding of probable cause." *United States v. Wagner,* 989 F.2d 69, 72 (2d Cir. 1993). Doubts regarding the existence of probable cause should be resolved in favor of upholding the search warrant. *Travisano,* 724 F.2d at 345.

Applying the foregoing standard of review to the in camera testimony at issue in this case, but without disclosing the contents of the testimony, the Court finds that the

state court judge correctly found probable cause to search both 489 Emerson Drive and the Jeep Commander for cocaine, cash, and other evidence. Given the existence of probable cause, Pennick's interest in reviewing the informant's testimony is minimal. Accordingly, the government's interest in keeping the informant's testimony and the state court judge's notes under seal outweighs Pennick's interest in obtaining this information. See Saltares, 301 F. Supp. 2d at 307 (denying disclosure of unredacted search warrant application where the government's interest in protecting the identity of its informant outweighed the defendant's need to review the application). The Court has considered whether the informant's testimony could be produced to the defense on an "attorney's eyes only" basis, but it finds this manner of production to be unnecessary because Pennick lacks standing to challenge the searches authorized by the warrant and the warrant is, in any event, supported by probable cause. Accordingly, Pennick's motion to compel the government to disclose the testimony of the confidential informant submitted in support of the search warrant application is denied. See United States v. Pirk, No. 1:15-CR-00142 EAW, --- F. Supp. 3d ----, 2017 WL 4779210, at *1-2 & n.4 (W.D.N.Y. Oct. 18, 2017) (finding motion to unseal search warrant affidavit to be a non-dispositive motion and affirming Magistrate Judge's order denying the motion).[6]

Regarding Pennick's request for disclosure of the informant's identity separate and apart from his or her testimony, the government is not generally required to disclose the identity of its confidential informants. Roviaro v. United States, 353 U.S. 53, 59 (1957). "The defendant bears the burden of showing the need for disclosure of an informant's

---

[6] The Court notes that Detective Imiolo appeared with the informant and also testified (albeit briefly) in support of the warrant application. Because Detective Imiolo's testimony relates to, and is intertwined with, the testimony given by the informant, it should remain sealed as well.

identity," which must then be balanced against "the government's interest in shielding the informant's identity." *Fields*, 113 F.3d at 324. "The need for disclosure is far less compelling when, as here, it is sought in connection with a pretrial suppression hearing on issues which do not bear on defendant's guilt." *Id.* For the same reasons Pennick is not entitled to the informant's in camera testimony, he is not entitled to learn the identity of the informant. Accordingly, this branch of Pennick's motion is denied as well.

Finally, Pennick filed a post-oral argument submission stating that the Erie County Sheriff's Office may have relied upon "intercepted cell phone communications and/or intercepted global positioning information" in support of the search warrant application for 489 Emerson Drive and the Jeep Commander, and that any such communications and information might present a suppression issue. (*See* Dkt. No. 59). Having reviewed the in camera testimony, neither the confidential informant nor Detective Imiolo mentioned any intercepted communications or global positioning information. Detective Imiolo did, however, indicate that the Sheriff's Office might attempt to intercept global positioning information from Pennick's ankle monitor sometime in the future, and it is possible that the Sheriff's Office obtained intercepted communications and information without disclosing them to the state court judge. Thus, to the extent the Erie County Sheriff's Office did in fact intercept cell phone communications or global positioning information relative to its investigation of this case, the government is directed to notify Pennick of same. (*See also* Dkt. No. 22 ¶48 (Pennick's request for "disclosure of whether a 'Stingray' monitoring device was employed during the government's investigation of this case and, in particular, whether any information or data obtained using such device was utilized in support of the government's showing of probable cause for any of the warrants in this

case and if so, if the source of such information or data was disclosed to the issuing magistrate.")).

### III. Motion for Discovery Relating to the Cell Phone Search Warrants

Pennick states that the government produced search warrants authorizing searches of six cell phones seized from 489 Emerson Drive, but that the government has not produced the search warrant applications, certain attachments to the warrants, and all of the data and information seized from the cell phones. (Dkt. No. 22 ¶¶29-34). Although the government agreed in its response papers to turn over information regarding the search warrants (see Dkt. No. 25 at 9), defense counsel indicated at oral argument that the government has yet to do so. Therefore, Pennick's motion for discovery relating to the cell phone search warrants is granted. The government is directed to produce the search warrant applications, all attachments to the warrants, and all data and information seized during the searches.

### IV. Motion to Suppress Identification Evidence

Pennick moves to suppress any evidence "flowing from [ ] identification procedures on the grounds that they were unduly suggestive and conducive to a substantial likelihood of irreparable misidentification." (Dkt. No. 22 ¶¶37-39). The government states in response that it "has not obtained any identification of the defendant that would be subject to suppression in this case." (Dkt. No. 25 at 9). Based on the government's response, Pennick's motion to suppress identification evidence is denied as moot.

### V. Motion for Notice of the Government's Intent to Use Evidence at Trial

Pursuant to Federal Rule of Criminal Procedure 12(b)(4), Pennick moves to compel the government to provide notice of its intention to use evidence at trial. (Dkt. No.

22 ¶¶40-44). The government states in response that it "intends to use at trial any and all evidence seized during the course of [its] investigation," including all evidence obtained while searching 489 Emerson Drive, the Jeep Commander, and the six cell phones seized from 489 Emerson Drive, evidence seized from the vehicle of Pennick's co-defendant, Geneva Smith, and Pennick's statements to Chief Granville. (Dkt. No. 25 at 10). Based on the government's response, Pennick's motion is denied as moot.

VI.   *Motion for Discovery*

Pennick moves for discovery and inspection pursuant to Federal Rule of Criminal Procedure 16. (Dkt. No. 22 ¶45). Rule 16(a) requires the government to disclose certain evidence and information upon the request of the defendant. *See* Fed. R. Crim. P. 16(a)(1). "Although Rule 16(a) provides a mechanism for liberal discovery, it was not intended to provide the defendant with access to the entirety of the government's case against him." *United States v. Percevault*, 490 F.2d 126, 130 (2d Cir. 1974). Rule 16 provides that a defendant is entitled to the following upon request: (1) certain written, recorded, and oral statements of the defendant, Fed. R. Crim. P. 16(a)(1)(A), (B); (2) the defendant's prior criminal record, Fed. R. Crim. P. 16(a)(1)(D); (3) certain documents and objects, Fed. R. Crim. P. 16(a)(1)(E); (4) certain results or reports of examinations and tests or experiments, Fed. R. Crim. P. 16(a)(1)(F); and (5) expert witness information, Fed. R. Crim. P. 16(a)(1)(G).

The government represents that it has provided or will provide all statements within the scope of Rule 16(a)(1)(A) and (B), that it will supply Pennick with his arrest record under Rule 16(a)(1)(D), that it has made available to Pennick objects and photographs under Rule 16(a)(1)(E) and the results and reports of examinations, tests, and

experiments under Rule 16(a)(1)(F), and that it will produce expert witness information under Rule 16(a)(1)(G) as directed by the assigned District Judge. (Dkt. No. 25 at 10-11). Based on the government's response, Pennick's request for discovery under Rule 16 is denied as moot. The government is reminded that its disclosure obligations continue up through and during trial. See Fed. R. Crim. P. 16(c).

Pennick also moves for the immediate disclosure of Brady[7] material and Giglio[8] impeachment material. (Dkt. No. 22 ¶46). "[A]s a general rule, Brady and its progeny do not require immediate disclosure of all exculpatory and impeachment material upon request by a defendant." United States v. Coppa, 267 F.3d 132, 146 (2d Cir. 2001). "[A]s long as a defendant possesses Brady evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner." Id. at 144. "[T]he time required for the effective use of a particular item of evidence will depend on the materiality of that evidence . . . as well as the particular circumstances of the case." Id. at 146.

The government states that it "acknowledge[s] its continuing duty under Brady to produce such material, if and when it is aware of it," but that it "is not in possession of any 'exculpatory' material within the contemplation of Brady" at this time. (Dkt. No. 25 at 12). With regard to Giglio impeachment material, the government states that it will produce such information in advance of trial. (Id. at 13). Given the government's representations, Pennick's motion to compel the immediate production of Brady/Giglio material is denied. Consistent with Coppa, the government shall timely disclose any Brady and Giglio

---

[7] Brady v. Maryland, 373 U.S. 83 (1963).
[8] Giglio v. United States, 405 U.S. 150 (1972).

-14-

material to Pennick. *See United States v. Padovani*, No. 14-CR-00224-WMS-JJM, 2016 WL 5402696, at *4 (W.D.N.Y. Sept. 28, 2016).

VII. *Motion for Disclosure of Evidence Pursuant to Federal Rules of Evidence 404(b) and 609*

Pennick moves to compel the government to disclose the evidence it intends to use against him at trial under Federal Rule of Evidence 404(b) and any evidence it intends to use to impeach his credibility under Federal Rule of Evidence 609. (Dkt. No. 22 ¶¶49-55). With regard to Rule 404(b), the government states that it "intends to use the defendant's conduct in his pending indictment, under 10-CR-191-A," and "the circumstances [regarding] the defendant's pre-trial release." (Dkt. No. 25 at 13-14). Regarding Rule 609, the government states that it "intends to impeach the defendant with any past criminal history, including any probation[,] [p]arole, or pretrial release history." (*Id.* at 14). Accordingly, based on the government's representations, Pennick's motion for disclosure of Rule 404(b) and 609 evidence is denied as moot. Pennick's request for an order precluding the government from using such evidence at trial is denied without prejudice to renewal before the assigned District Judge. *See United States v. Torres*, No. 11-CR-151A, 2014 WL 3548935, at *5 (W.D.N.Y. July 17, 2014) (holding that the admissibility of Rule 404(b) and 609 evidence "is best left to the determination of the trial judge at the time of trial").

VIII. *Motion for Disclosure of Jencks Act Materials*

Pennick moves to compel the government to disclose witness statements at least two months before trial. (Dkt. No. 22 ¶¶56-60). Under the Jencks Act, "[a]fter a witness called by the United States has testified on direct examination, the court shall, on motion

of the defendant, order the United States to produce any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C. §3500(b). Here, the government states that it will disclose such statements "at least two weeks prior to trial, or as directed by the District Court's trial schedule order." (Dkt. No. 25 at 14). Because the Court cannot compel the government to produce the statements any earlier than is required under §3500, see *Percevault*, 490 F.2d at 129, Pennick's motion for early disclosure of such statements is denied.

Relatedly, Pennick moves for preservation of rough notes prepared by officers or agents in connection with the investigation of his case. (Dkt. No. 22 ¶61). The government states in response that it "will endeavor to maintain such materials, if they exist." (Dkt. No. 25 at 12). Thus, this branch of Pennick's motion is granted, and the government is directed to preserve all rough notes.

IX. *Motion for Leave to Join in Co-Defendant's Motions*

Pennick moves for leave to join in any motions filed by his co-defendant, Geneva Smith. (Dkt. No. 22 ¶62). The Court will grant Pennick's motion to the extent that the motions he seeks to join in are applicable to his case and he has standing to join in them. See *United States v. Montalvo*, No. 11-CR-00366-RJA-JJM, 2014 WL 3894377, at *1 n.6 (W.D.N.Y. Apr. 16, 2014). Any decision by the Court as to Smith's pre-trial motions shall also be deemed to be the decision of the Court as to Pennick, to the extent applicable.

X. *Motion for Leave to File Other Motions*

Pennick moves for leave to file other motions. (Dkt. No. 22 ¶¶63-65). To the extent Pennick requests permission to file other motions based upon new information or

evidence that has not yet been disclosed, the request is granted. To the extent Pennick intends to file other motions concerning issues that could have been raised prior to the previous motion deadline, his request is denied without prejudice to filing the motion upon a showing of good cause for the untimely filing.

XI.  *Government's Motion for Reciprocal Discovery*

The government moves for reciprocal discovery under Federal Rule of Criminal Procedure 16(b). (Dkt. No. 25 at 14-15). Pennick has not opposed the government's request. Therefore, the government's motion for reciprocal discovery is granted.

### CONCLUSION

For the foregoing reasons, it is recommended that Pennick's motion to suppress statements (Dkt. No. 22) be denied. Pennick's non-dispositive pre-trial motions (Dkt. No. 22) are granted in part and denied in part as set forth herein. The government's motion for reciprocal discovery (Dkt. No. 25) is granted. Contemporaneous with the filing of the instant Report, Recommendation and Order, the Court has filed a separate Report, Recommendation, and Order addressing the pre-trial motions of Pennick's co-defendant, Geneva Smith. Therefore, because the Court has now reported on or decided all of the pre-trial motions filed by both defendants, further proceedings in this case should take place before Judge Arcara.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ORDERED that this Report, Recommendation, and Order be filed with the Clerk of Court.

Unless otherwise ordered by Judge Arcara, any objections to this Report, Recommendation, and Order must be filed with the Clerk of Court within fourteen days of service of this Report, Recommendation, and Order in accordance with the above statute,

Rules 59(b), 45(a), and 45(c) of the Federal Rules of Criminal Procedure, and Local Rule of Criminal Procedure 59. Any requests for an extension of this deadline must be made to Judge Arcara.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report, Recommendation, and Order WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** See Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990-91 (1st Cir. 1988).

Pursuant to Local Rule of Criminal Procedure 59(c)(2), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." ***Failure to comply with these provisions may result in the District Court's refusal to consider the objection***.

**SO ORDERED.**

Dated:  February 23, 2018
        Buffalo, New York

*[signature]*
MICHAEL J. ROEMER
United States Magistrate Judge