# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NEW YORK

THE UNITED STATES OF AMERICA,

    -vs-

TYRONE PENNICK,

                    Defendant.

**NOTICE OF MOTION FOR JUDGMENT OF ACQUITTAL AND/OR FOR A NEW TRIAL (RULE 29 AND RULE 33)**

17-CR-0015A

PLEASE TAKE NOTICE, that upon the Affirmation of Donald M. Thompson, Esq., attorney for the defendant and upon the Indictment and all prior papers and proceedings, the defendant moves this Court for an order vacating his conviction and/or for a new trial for the reasons set forth below, and for such further relief as the Court deems just and proper.

Dated: October 31, 2018

                                              <u>s/Donald M. Thompson</u>
                                              **DONALD M. THOMPSON, ESQ.**
                                              Attorney for TYRONE PENNICK
                                              16 West Main Street, Suite 243
                                              Rochester, New York 14614
                                              (585) 423-8290

To:

Clerk, United States District Court
Western District of New York
2 Niagara Square
Buffalo, New York 14202

**JAMES P. KENNEDY, JR., ESQ.**
United States Attorney
138 Delaware Avenue
Buffalo, New York 14202
Attn.: **JOEL VIOLANTE, ESQ.**
       **LAURA HIGGINS, ESQ.**

1

# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NEW YORK

THE UNITED STATES OF AMERICA,

       -vs-

TYRONE PENNICK,

          Defendant.    17-CR-0015A

**ATTORNEY'S AFFIRMATION**

DONALD M. THOMPSON, ESQ., under penalty of perjury pursuant to 28 U.S.C. § 1746, states as follows:

1. I am an attorney licensed to practice in the State of New York and the United States District Court for the Western District of New York, I represent the defendant in the above-captioned matter and I make the factual allegations contained herein in support of the relief sought in the annexed Notice of Motion.

2. The sources of my information and grounds for my belief are conversations between myself and the defendant, examination of the papers filed in this case, review of the discovery provided by the government my independent investigation of this matter.

3. By the above-numbered indictment, the defendant was charged conspiracy to possess with intent to distribute, and to distribute in excess of 500 grams of a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 2 and 846, maintaining a

2

drug-involved premises in violation of 21 U.S.C. § 856(a)(1), violation of the terms of supervised released in violation of 18 U.S.C. § 3147. On October 17, 2018, following a jury trial before this Court, defendant was found guilty of all of the above counts.

4. Defendant now moves for a judgment of acquittal or in the alternative, for a new trial with respect to each count of the indictment, for the reasons set forth below.

5. One of the most fundamental aspects of our criminal justice system is the principle that evidence supporting a conviction must be sufficient with regard to each element of the crime (*see Jackson v. Virginia*, 443 U.S. 307, 319 [1979]). Therefore, pursuant to Fed. R. Crim. Pro. 29, the Court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."

6. Under Rule 29 and the Due Process Clause, the relevant inquiry is whether, considering the evidence, a reasonable trier of fact could have found that the evidence established the elements of the crime beyond a reasonable doubt (*see id*; *United States. v. Kwong*, 14 F.3d 189, 193 [2nd Cir. 1994] ["To support a conviction, the evidence need not exclude every reasonable hypothesis, other than guilt"]).

7. Along these lines, any conviction must be based upon firm proof and cannot stand on speculation and conjecture alone (*see United States v. D'Amato*, 39 F.3d 1249, 1256 [2nd Cir. 1994] ["[A] conviction based on speculation and surmise alone cannot stand . . . [T]he government must introduce evidence to allow the jury to reasonably infer that each essential

element of the crime charged has been proven beyond a reasonable doubt"]).  Although the government is not required to negate every theory of innocence, equal or nearly equal levels of circumstantial evidence supporting theories of guilt and of innocence cannot support a conviction as the jury must then have contemplated a reasonable doubt (*see United States v. Autuori*, 212 F.3d 105, 114 [2nd Cir. 2000]; *see also United States v. Glenn*, 312 F.3d 58, 70 [2nd Cir. 2002]; *see also United States v. Kandar*, 2010 WL 883685 [W.D.N.Y. 2010]).

8. Defendant contends that the government failed to present evidence sufficient to sustain each count of the indictment as required under the standards set forth above.

9. Further, with respect to each count of the indictment, defendant contends that even if the government's proof could be found to be legally sufficient to sustain a finding that he engaged in the criminal activities alleged, the evidence was still insufficient to sustain a conviction because the proof failed to demonstrate that defendant engaged in any of those activities within the time-frame alleged in the indictment.

10. It is well settled that "possession of [even] a small quantity of drugs standing alone is insufficient to prove an intent to distribute" (*United States v. Martinez*, 54 F.3d 1040, 1043 [2nd Cir. 1995] citing *Turner v. United States*, 396 U.S. 398, 422-23 [1970]; *United States v. Boissoneault*, 926 F.2d 230, 234 [2nd Cir. 1991]; *United States v. Gaviria*, 740 F.2d 174, 184 [2nd Cir. 1984]; *see also United States v. Washington*, 586 F.2d 1147, 1153 [7th Cir.

1978]; *see United States v. Hardy*, 895 F.2d 1331, 1334 [11th Cir. 1990]; *United States v. Franklin*, 728 F.2d 994, 999 [8th Cir. 1984]).

11. For example, in the context of cocaine base, possession of less than 8 grams without more is insufficient as a matter of law to raise an inference of intent to sell (*see United States v. Hunt*, 129 F.3d 739, 742 [5th Cir. 1997]; *see also United States v. Jackson*, 993 F.2d 1548 [6th Cir. 1993] [14.5 grams of cocaine base insufficient]).

12. The government may (and this case, did) introduce expert testimony to establish circumstances allegedly evincing drug distribution, however this evidence cannot, standing alone, give rise to legally sufficient evidence even where a defendant is found in possession of a small quantity of a controlled substance (*Boissoneault, supra* [possession of 5.31grams of cocaine, $1,460 in small bills, and papers that characterized by a DEA agent as "accounts receivable" insufficient to establish proof of intent to distribute when combined with agents testimony regarding the habits of drug dealers]).

13. However here, the defendant was not found in possession of any cocaine following the execution of a search warrant at his home and upon a vehicle allegedly utilized by him and no one ever observed the defendant in possession of any cocaine during the time-frame alleged in the indictment. Although the government contended that 2 kilos of cocaine seized from Geneva Smith when her car was stopped shortly after leaving the defendant's residence was either actually or constructively possessed by the defendant either personally

or as accessory to Ms. Smith, the government offered no proof that the cocaine came from or was ever in the defendant's home (as opposed to Ms. Smith's car, for example, or accessed from a concealed location behind but not within the defendant's residence) or known to the defendant.

14. Beyond failing to prove that defendant possessed the cocaine seized from Ms. Smith (or any other cocaine on November 17, 2016, the date defendant's home was searched and he was arrested), the evidence was legally insufficient to prove that the defendant possessed cocaine with the intent to distribute it at *any* time during the time-frame alleged in the indictment (that is, from the beginning of November until November 17, 2016).

15. Notably, the government offered the testimony of Donnell Cherry relating to defendant's alleged possession and distribution of cocaine, however with respect to the alleged dates of defendant's activities, Mr. Cherry's testimony was equivocal at best and far from the proof beyond a reasonable doubt required to show that the defendant engaged in any of the described activities within the time-frame charged in the indictment. There was no other evidence that could establish that the defendant possessed controlled substances with intent to distribute them during the time-frame alleged in the indictment.

16. For the foregoing reasons it is respectfully requested that the Court enter a judgment of acquittal with respect to each count of the indictment.

17. In addition, and in support of his motion for a new trial, defendant renews his objections to the Report and Recommendation (reasserted in his motion in limine) to the Court's ruling that there was insufficient proof of the defendant's standing to challenge the search of his residence and a vehicle he utilized to permit him to move for suppression of evidence seized as a result of those searches.

18. At the suppression hearing, defendant argued that standing to contest such search was established by counsel's sworn affirmation and by the government's actual knowledge of defendant's residence, where the government itself engineered, monitored and possessed actual knowledge of defendant's occupancy of the premises to be searched as his primary (and only government approved) residence. Because defendant was required, by the conditions of release, to remain confined to 489 Emerson Drive, the government possessed, through electronic monitoring, actual knowledge of defendant's presence at that location day by day and indeed, minute by minute. According to defendant's conditions of release as ordered by this Court, any absence by the defendant from that premises without the prior permission of his probation officer would have violated the conditions of defendant's release, however the government never alleged any such violations or absences by the defendant from 489 Emerson Drive.

19. In addition to defendant's allegations, as established by its arguments in its pretrial memorandum, the government possessed actual knowledge that it independently verified

7

defendant's occupancy of 489 Emerson Drive when it was searched on November 17, 2016. This evidence includes the testimony and records of Probation Officer Lepiani which the government offered at trial. The government also possessed (at the time of both the trial and the suppression hearing) the grand jury testimony of Erie County Sheriff's Detective Adam Imiolo, who testified before the grand jury that the defendant was released to probation supervision on the condition that he reside at 489 Emerson Drive (attached as Exhibit A to defendant's motion in limine).

20. Detective Imiolo testified that he confirmed defendant's residence based on records he received from the U.S. Probation Department and also based on information he received from confidential sources. Finally, Detective Imiolo testified that he independently confirmed defendant's residence through ongoing surveillance of the property during which he observed the defendant and vehicles associated with the defendant at the property on multiple occasions.

21. Thus, according to the government's own assertions it was unequivocally aware of defendant's expectation of privacy in the residence at 489 Emerson Drive at the time the search warrant at that residence was executed, without regard to (or need for) any assertions made by the defendant. Based on the government's assertions, defendant could not have credibly contended that he did not have standing to contest the search at 489 Emerson Drive.

22. Most courts that have considered the issue of reliance by the government on factually inconsistent arguments in a trial context have concluded that there must be some constraints on this tactic (*see, Smith v. Groose*, 205 F.3d 1045, 1049-52 [8th Cir. 2000]; *Thompson v. Calderon*, 120 F.3d 1045, 1054-60 [9th Cir. 1997] [en banc] [plurality], *rev'd on other grounds*, 523 U.S. 538 [1998]; *United States v. Salerno*, 937 F.2d 797, 812 [2nd Cir. 1991], *rev'd on other grounds*, 505 U.S. 317 [1992]; *United States v. Bakshinian*, 65 F. Supp.2d 1104, 1110-11 [C.D. Cal. 1999]; *United States v. Butner*, ___ F. Supp.2d ___, 2000 WL 1842410 *17 [W.D. Mo. 2000]; *see also, United States v. Kattar*, 840 F.2d 118, 127-29 [1st Cir. 1988]).

23. These concerns are not limited to presentation of trial proof however. The leading decisions in this area criticize inconsistency of "theories," "arguments," and "claims" asserted by the prosecution, rather than merely its use of different "evidence" at trial (*see, Smith v. Groose*, 205 F.3d 1045, 1050 [8th Cir. 2000]; *Thompson, supra*, 120 F.3d at 1054; *United States v. Salerno, supra*; *United States v. Drake*, 762 F.2d 1449, 1478 [11th Cir. 1985]). The claimed error is not limited to inconsistent positions concerning a witness or witnesses but rather to broader due process concerns (*Smith v. Groose, supra*, 205 F.3d at 1052 [due process violated when "the core of the prosecutor's cases against defendants for the same crime" is inconsistent]). Further, the courts in *Salerno*, *Thompson*, and *Smith*

9

focused on whether the prosecutor *advanced* a fundamentally inconsistent theory at the defendant's trial, not on whether the jury *accepted* that theory.

24. The Second Circuit has also found that confidence in the system "cannot be affirmed if any party is free, wholly without explanation, to make a fundamental change in its version of the facts between trials, and then conceal this change from the final trier of the facts" (*United States v. Salerno, supra*, 937 F.2d at 812).

25. Defendant therefore renews his objections to the Court's refusal to find that he had standing to suppress the fruits of the search warrants in this case and renews his suppression motion based on his standing to challenge such searches based on the government's actual knowledge of the defendant's expectation of privacy in his residence and vehicle, which the government admitted having.

26. Finally, defendant moves for a new trial based on the admission of his statements made during, and just after the execution of the search of his home on November 17, 2016 relating to money discovered during the search on the grounds that such statements were neither the admissions of a party opponent nor against the defendant's penal interest and therefore, were inadmissible hearsay. The statements made concerning the source of funds seized during the search were not against Mr. Pennick's penal interest either when they were made or at trial, most tellingly because the government made no attempt to prove that the statements were false. Given the content of the statements made, they were not, without a

demonstration of untruthfulness, any acknowledgment of wrongdoing. As such, there was no basis to find that defendant's statements were "admissions" such that they could be admitted despite the fact that they are hearsay.

27. Defendant therefore requests that the Court order a new trial based on the prejudice to the defendant as a result of the improper admission of these hearsay statements.

WHEREFORE, defendant requests that this Court grant and judgment of acquittal with respect to each of the counts of the indictment or, in the alternative, an order vacating the jury's verdict and directing a new trial based on the errors described above.

Dated: October 31, 2018

s/Donald M. Thompson<br>DONALD M. THOMPSON, ESQ.<br>Attorney for TYRONE PENNICK

## CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2018, I electronically filed the foregoing **Notice of Motion** with the Clerk of the District Court using the CM/ECF system, which would then electronically notify the CM/ECF participants as counsel of record in this case.

s/Donald M. Thompson<br>Donald M. Thompson, Esq.<br>Attorney for the Defendant