UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――

UNITED STATES OF AMERICA,

**DECISION AND ORDER**
v.                                                        17-CR-15-A

TYRONE PENNICK,
                          Defendant.

―――――――――――――――――――――――――

On October 17, 2018, defendant Tyrone Pennick was convicted of three narcotics-related offenses after a four-day jury trial.  The defendant was convicted of one Count of conspiracy to possess with intent to distribute, and to distribute, more than 500 grams of cocaine in violation of 21 U.S.C. § 846; one Count of possession with intent to distribute more than 500 grams of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 18 U.S.C. § 2; and one Count of maintaining a drug-involved premises in violation of 21 U.S.C. § 856(a)(1).  The jury also found that each of offenses were committed while the defendant was under supervision on federal pretrial release.

Defendant Pennick moves pursuant to Fed. R. Crim. P. 29 for a judgment of acquittal notwithstanding the jury's verdicts primarily on the ground that there was insufficient evidence for a rational jury to find that he possessed cocaine.  For reasons that are stated below, the Court finds that the jury's the guilty verdicts were supported by legally sufficient evidence.  The defendant's motion pursuant to Rule 29 for a judgment of acquittal is therefore denied.

1

The defendant also moves for a new trial pursuant to Fed. R. Crim. P. 33. In support of his new-trial motion, the defendant argues that he was unfairly prejudiced by an evidentiary ruling, renews some pretrial motions related to a suppression issue, and argues that he suffered from a due process violation as a result of outrageous government conduct. After careful consideration, for reasons that are also stated below, the Court does not find the guilty verdicts manifestly unjust. The defendant's motion for a new trial is denied.

## DISCUSSION

**Rule 29 Motion for a Judgment of Acquittal.**

In general, Rule 29 imposes a "heavy burden" on a defendant challenging his conviction following a jury trial. *United States v. Cuti*, 720 F.3d 453, 461 (2d Cir. 2013). A court may enter a judgment of acquittal:

> only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt. In applying these principles, [the Court] review[s] all of the evidence presented at trial in the light most favorable to the government, crediting every inference that the jury might have drawn in favor of the government.

*United States v. Facen*, 812 F.3d 280, 286 (2d Cir. 2016) (quotations and citations omitted). Accordingly, Rule 29 requires the Court to give substantial deference to a jury's findings as to "the weight of the evidence and the reasonable inferences to be drawn" from the evidence. *Id.* (quotation omitted). Not only that the Court "must credit every inference that could have been drawn in the government's favor," but, in assessing the sufficiency of the evidence, the Court "must view the evidence as a whole." *United States v. Applins*, 637 F.3d 59, 76 (2d Cir. 2011). And "where either

of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, the court must let the jury decide the matter." *Facen*, 812 F.3d at 286 (quotation and brackets omitted).

Briefly, evidence introduced during the defendant's trial viewed "in the light most favorable to the government, with all reasonable inferences drawn in its favor," *United States v. Rowland*, 826 F.3d 100, 105 n.1 (2d Cir. 2016) (quotation marks omitted) showed that law enforcement officers executed a search warrant at the defendant's residence on November 17, 2016 and seized a kilo-sized drug press, $49,990 in cash, a digital scale, and various items of drug-trafficking paraphernalia. At the time, the defendant was confined to his residence being electronically monitored on home incarceration as a condition of federal pretrial release.

Just before the search warrant was executed, two bricks of cocaine loosely matching the dimensions of the kilo-sized drug press in defendant's residence were seized from a tote bag of a friend of the defendant's, Geneva Smith, shortly after she drove away from the defendant's residence after stopping there and picking up the bag. Some of her clothes were also in the bag.

The circumstantial evidence showed that Smith picked up the two bricks of cocaine from the defendant at his residence. The cocaine weighed nearly two kilograms.

After the defendant was arrested, he was told that a significant amount of money had been found during the search of in his residence. The defendant responded that it is not illegal to keep a large sum of money and said that the money

came from the IRS.  The $49,990 in cash was vacuum sealed in plastic and was found inside a dishwasher.

A cooperating witness, Donnell Cherry, testified about cocaine transactions he had with the defendant in the months prior to the defendant's arrest.  His testimony included that the defendant delivered multi-ounce quantities of cocaine on certain days of the week that corresponded with days when defendant was authorized to leave his residence by the terms of his pretrial release.

Defendant Pennick argues that insufficient evidence supports the jury conclusion beyond a reasonable doubt that he possessed cocaine.  In resolving the defendant's Rule 29 motion, the Court must evaluate "the totality of the government's case, . . . as each fact may gain color from others."  *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir.  1999) (citing *United States v. Monica*, 295 F.2d 400, 401 (2d Cir. 1961) (Friendly, J.)).  And when the United States introduces circumstantial evidence it "need not 'exclude every reasonable hypothesis other than that of guilt.'" *Guadagna*, 183 F.3d at 130 (quoting *Holland v. United States*, 348 U.S. 121, 139 (1954)).  Apply these principles, the Court finds the evidence here was more than sufficient for "any rational trier of fact [to] have found," beyond a reasonable doubt, that the defendant possessed the two bricks of cocaine that were seized from Geneva Smith shortly after she left his residence.

By way of background, on November 17, 2016, before the seizures, law enforcement officers were surveilling the defendant's residence at 489 Emerson Drive, equipped with the search warrant.  A woman later identified as Smith arrived at the residence in a maroon Ford Flex.  Smith got out of the vehicle and went into

the defendant's residence empty-handed.  When she left, about ten minutes later, she had a two-handled open-top tote bag on her shoulder.  She got in the Ford Flex, and drove away toward the City of Buffalo, which is nearby.

Smith was followed by a Senior Detective from the defendant's residence off Emerson Drive, onto North Bailey Avenue heading south, toward the City of Buffalo. He was in an unmarked law enforcement vehicle immediately behind Smith in the Ford Flex.  As Smith crossed the intersection of Main Street and North Bailey Avenue in Buffalo, she reached for the tote bag on the passenger seat beside her and moved it to the back seat of the vehicle.  When the defendant shifted the tote bag to the back seat, law enforcement officers decided to pull her over before she could warn anyone that she was being followed or do anything else unsafe while driving.

When the Senior Detective opened the back door of the Ford Flex, he saw a translucent plastic food-storage container with what he suspected was a kilogram-sized brick of cocaine in the open-top tote bag among some clothes.  He left the cocaine in the tote bag with other officers and rushed back to defendant Pennick's residence to help execute the search warrant.  A second kilogram-sized brick of cocaine was later recovered from the tote bag underneath the first.

As mentioned previously, a device identified by an expert witness as a kilo-press used to compress powdered narcotics into brick shapes for handling was seized during execution of the search warrant at the defendant's residence.  It loosely matched the sizes of the two bricks of cocaine seized from the tote bag Smith had picked up from the defendant's residence.  The $49,900 cash was seized

from inside the dishwasher.  A digital scale was seized, along with a box of rubber gloves, a bag of disposable dust masks, and a vacuum-sealer, all items that may be used to process cocaine for distribution, were nearby.

The conclusion that defendant Pennick possessed cocaine for distribution just before the nearly two kilograms of cocaine were seized from Geneva Smith was bolstered by the testimony of Donnell Cherry about his smaller cocaine transactions with the defendant in the months leading up to November 2016.  A rational juror could easily conclude beyond a reasonable doubt that the defendant had possessed the cocaine that was seized from Smith and that he conspired with her to distribute it.  Especially because the defendant was confined to his residence subject to electronic monitoring, it was also a rational inference from the evidence of drug-trafficking paraphernalia and cash seized from the premises that they were being used or were related to the distribution of cocaine.

**Rule 33 Motion for a New Trial.**

Defendant Pennick seeks a new trial pursuant to Fed. R. Crim. P. 33 on the ground that he was unjustly prejudiced when the Court admitted a law enforcement officer's testimony of some of the defendant's post-arrest oral statements.  The defendant argues that these out-of-court oral statements were inadmissible hearsay evidence because the statements were not shown to be either his admissions or statements again his penal interest.

Rule 33(a) provides, in part, that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  In general, the Rule  "confers broad discretion upon a trial court to set aside a jury

verdict and order a new trial to avert a perceived miscarriage of justice."  *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992).  But "[t]o grant [a Rule 33] motion, '[t]here must be a real concern that an innocent person may have been convicted.' "  *United States v. Aguiar*, 737 F.3d 251, 264 (2d Cir. 2013) (quoting *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 1997) (alteration omitted).

The argument that defendant Pennick's out-of-court statements were improperly admitted is easily addressed.  Pursuant to Fed. R. Evid. 801(d)(2)(A), a statement is not hearsay if it is offered against a party and is the party's own statement.  The statements of the defendant that are at issue were made on November 17, 2016, when a law enforcement officer told the defendant that a large amount of cash had been found in his residence.  The officer's trial testimony was essentially that the defendant responded by stating that it is not illegal to possess a large amount of cash and that the money came from the IRS (presumably, the Internal Revenue Service), and that the defendant then mentioned something about a clothing line.

Defendant Pennick is correct that the testimony about his post-arrest oral statements was damaging to his cause.  False exculpatory statements can reveal a guilty mind, and in the context of all the testimony and evidence during the trial, the defendant's statements about the source of the $49,990 in cash that was found in a vacuum-sealed plastic bag in the dishwasher in his residence came across as concocted to hide that the money was related to cocaine trafficking.  Nevertheless, whether these statements were admissions or statements against the defendant's

penal interest is irrelevant because a statement is not hearsay if it is offered against a party and is the party's own statement.  Rule 801(d)(2)(A) provides:

> A statement that meets the following conditions is not hearsay:  . . . The statement is offered against an opposing party and . . .  was made by the party in an individual or representative capacity.

*Id.*  Whether the post-arrest oral statements of the defendant were admissions or were statements against his penal interest would be relevant in this context only if the statements were hearsay and triggered a hearsay exception at Fed. R. Evid. 804(b)(3).  But defendant's statements about the source of nearly $50,000 in cash found in the dishwasher were simply not hearsay and were properly admissible as his own statements pursuant to Rule 801(d)(2)(A).  *See e.g., United States v. Gotti*, 457 F.Supp.2d 395, 401-02 (S.D.N.Y. 2006).

In support of his motion for a new trial, defendant Pennick also seeks to renew his prior motions related to suppression evidence seized from his residence at 489 Emerson Drive, Amherst, New York, during execution of a search warrant. The defendant contends the search warrant was not supported by probable cause and that the evidence seized from his residence should therefore have been suppressed due to a violation of his Fourth Amendment rights; and he sought various disclosures to help establish that contention.  But the Court previously found the defendant had failed to establish that he had standing to contest the seizures. Dkt. No. 79, pp. 2-3.  The Court's prior ruling on the standing question is the law of the case and therefore is not to be revisited unless cogent and compelling reasons

exist for doing so.  *See United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir.

2002).  The defendant has provided the Court with no such reasons.

Defendant Pennick argues, primarily because he was subject to home

incarceration on electronic monitoring at 489 Emerson Drive as a condition of a

federal pretrial release order when the search warrant was executed, that there is no

reason to doubt that 489 Emerson was his residence.  He argues there was no need

for him to submit a personal affidavit or affirmation in support of his motion to

suppress to meet the threshold requirement of establishing a reasonable

expectation of privacy in those premises and that his counsel's affirmation that the

defendant resided at 489 Emerson Drive was sufficient to established his Fourth

Amendment standing.

Although a residence has special status under the Fourth Amendment, *see*

*e.g.*, *Payton v. New York*, 445 U.S. 573, 589 (1980), standing to challenge the

search of a residence is neither automatic nor presumed.  *See e.g.*, *United States v.*

*Watson*, 404 F3d 163 (2d Cir. 2005).  Instead, it is generally well settled that:

> A defendant seeking to suppress evidence must
> demonstrate that he had a reasonable expectation of
> privacy in the location or items searched.  *See Rakas v.*
> *Illinois*, 439 U.S. 128, 143 (1978).  "[The] defendant must
> demonstrate that he himself exhibited an actual subjective
> expectation of privacy in the area searched, and that this
> subjective expectation is one that society is willing to
> accept as reasonable." *United States v. Fields*, 113 F.3d
> 313, 320 (2d Cir. 1997).  The defendant can meet this
> burden "only by sworn evidence, in the form of an affidavit
> or testimony, from the defendant  or someone with
> personal knowledge." *United States v. Hemingway*, No.
> 05-CR-6108L, 2007 WL 499470, at *9 (W.D.N.Y.  Feb. 13,
> 2007) (quoting *United States v. Montoya-Eschevarria*, 892
> F. Supp. 104, 106 (S.D.N.Y. 1995)).

Dkt. No. 61, pp. 8-9.  The issue here was not where the defendant was living; it was whether he had shown that he had a reasonable subjective expectation of privacy in the premises that were searched.  When 489 Emerson Drive was searched on November 17, 2016, the defendant was on electronically monitored home incarceration pursuant to an Order Setting Conditions of Release that included a condition that those premises were subject to a suspicionless search.  *See* 10-CR-191, Dkt. No. 791, p. 2 ("submit to a search of his person, residence, vehicle and any other property under his control"); Dkt. No. 64, p. 7, n.1.  The defendant signed the pretrial release Order acknowledging that he was aware of all the conditions it imposed.  See 10-CR-191, Dkt. No. 791, p. 3.  And the Court previously determined that it could not find that the defendant had a reasonable and subjective expectation of privacy in 489 Emerson Drive of the kind "that society is willing to accept as reasonable" when he and his residence were subject to the suspicionless search condition imposed in the pretrial release Order.  Dkt. No. 79, pp. 2-3.

The defendant points to no intervening change of controlling law, new evidence, clear error, or a need to prevent manifest injustice to justify revisiting the law of the case on the question of his Fourth Amendment standing.  *See United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002) (quotations omitted).  Instead, the defendant disregards that his residence was subject to suspicionless searches as a Court-ordered condition of pretrial release and that he reasonably is held to have known it.  Even now, the defendant makes no argument that he could have had a reasonable expectation of privacy in light of that condition of his release.

Accordingly, there was no manifest injustice in the Court's prior finding that the defendant failed to carry his burden to establish Fourth Amendment standing to contest the search of 489 Emerson Drive and there is no other reason to revisit the question.

Similarly, defendant Pennick's arguments that he should now be given information related to a confidential informant who was relied upon by the state court judge who issued the search warrant for 489 Emerson Drive, but who did not testify at trial, are also barred by the law of the case doctrine.  The presiding Magistrate Judge denied the defendant's prior motion for this relief, Dkt. No. 61, pp. 6-11, and the defendant did not appeal or seek reconsideration of that decision pursuant to 28 U.S.C. § 636(b)(1)(A).  *See* Dkt. No. 64 (defendant argued only that the Magistrate Judge's conclusion with respect to standing was "premature" and was otherwise without merit).  The defendant continues to insist that disclosure of the informant's testimony and statements before the judge who issued the search warrant are necessary for him to assess whether probable cause existed for issuance of the warrant, but that presumes he has standing to contest the search and a legitimate use for the disclosure he seeks.

At this point, defendant Pennick identifies nothing that occurred during the trial that rendered any further disclosure related to the confidential informant material to his defense.  The confidential informant played no role in the trial.  Accordingly, the defendant has given the Court no cogent or compelling reason for the Court seriously to consider altering the prior ruling on these issues.  *See Quintieri*, 306 F.3d at 1225 (2d Cir. 2002).

In a supplemental filing in support of his Rule 33 motion, defendant Pennick argues not only for a new trial, but for outright dismissal of the Indictment based upon outrageous government conduct that violated his due process rights. The defendant seems eventually to argue that a possible failure by the United States to disclose *Jencks*[1] or *Brady*[2] material related to a trial witness, Donnell Cherry, warrants extensive investigatory disclosures and an evidentiary hearing to determine whether useful exculpatory or cross-examination material exists and whether the defendant was prejudiced by its nondisclosure. *See* Dkt. No. 121, pp. 12-15.

To establish a violation of due process on an outrageous-government-conduct theory, a defendant must ordinarily show conduct by the United States " 'so repugnant and excessive' as to shock the conscience," *United States v. Romano*, 706 F.2d 370, 372 (2d Cir.1983) (quoting *United States v. Alexandro*, 675 F.2d 34, 39 (2d Cir. 1982). The standard requires a showing tantamount to "coercive action or [an] outrageous violation of physical integrity." *United States v. Jackson*, 345 F.3d 59, 67 (2d Cir. 2003) (quotation omitted). The burden of establishing outrageous government conduct is "very heavy." *United States v. Schmidt*, 105 F.3d 82, 91 (2d Cir. 1997). Here, the defendant's claims are too speculative to warrant relief under this standard.

---

[1] *Jencks* refers to *Jencks v. United States*, 353 U.S. 657, 667-72 (1957), the landmark case on the due process right to inspect, for impeachment purposes, prior statements that a government witness made to a government agent, and is used here synonymously for the term "statement" in 18 U.S.C. § 3500(e) and the procedures that require the government to provide these materials to a defendant.

[2] *Brady* denotes *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, to refer to favorable information that is "material" either to guilt or punishment that the prosecution has a constitutional duty to disclose to a defendant.

The defendant complains primarily that there must be some undisclosed *Jencks* or *Brady* material that was developed when Donnell Cherry was interviewed by local law enforcement officers for hours after two properties of Cherry's were searched about a week before the defendant's residence at 489 Emerson Drive was searched, and that Cherry only belatedly admitted the officers were confronting him about the defendant's cocaine-trafficking with Cherry during the interview.  *See e.g.*, Dkt. No. 125, pp. 62-68; *but see* Dkt. No. 125, pp. 48-49 (none of the officers were taking notes).  The defendant surmises that Cherry at a minimum would have then identified a picture of the defendant for the officers and that his identification must have been part of the basis for the search warrant application for 489 Emerson Drive a week later.  The defendant concludes these circumstances warrant further disclosures and then a hearing.

However, as the United States points out, information that Donnell Cherry only belatedly admitted to local law enforcement officers that he engaged in cocaine trafficking with defendant Pennick, and that the defendant was the source of cocaine seized from Cherry, is hardly favorable to the defendant.  And defense counsel was able to make reasonable use of the information at trial, including by eliciting concessions that the witness had previously denied involvement with the defendant and had previously denied that he eventually admitted it, after these circumstances all surfaced during Cherry's testimony.

Granted, if the defendant's speculation that information about Cherry was improperly not disclosed to the defense is correct, this information would potentially be favorable impeachment material for use with local law enforcement witnesses

13

who testified about steps taken during the investigation.  But defense counsel did

not seek to recall any prosecution witness in light of Cherry's testimony.  And even if

the information had been used effectively to impeach witnesses about steps taken in

the investigation, the Court finds the information would not reasonably likely have

changed the outcome of the trial.  It would certainly would not have conferred

standing upon the defendant to contest the search of 489 Emerson Drive.  And the

totality of the evidence against the defendant, including the kilo-sized drug press

loosely matching the dimensions of the two bricks of cocaine that were seized from

Geneva Smith shortly after she left the defendant's residence with them, the

$49,990 in cash in the dishwasher, the digital scale, other drug-trafficking

paraphernalia, and the defendant's oral statement that the money in his dishwasher

was not illegal and came from the IRS, was too incriminating.  Information about

Cherry's interactions with law enforcement or his other conduct that the defendant

supposes might exist would, on balance, likely be more detrimental than helpful to

the defense.  After due consideration, the Court finds that even if the Court were to

assume that there was undisclosed *Jencks* or *Brady* information of the kind the

defendant supposes existed, it would not have mattered during the trial and does not

undermine confidence in the jury's verdict.  *See e.g.*, *United States v. Nicolapolous*,

30 F.3d 381, 383 (2d Cir. 1994) (undisclosed *Jencks*); *United States v. Orena*, 145

F.3d 551, 559 (2d Cir. 1998) (undisclosed *Brady*).  Not only are there no grounds to

dismiss the Indictment, there are no grounds to justify a new trial based upon the

supposition that *Jencks* or *Brady* materials were not disclosed.

14

Finally, the Court has also considered defendant Pennick's Rule 29 arguments that the evidence against him was legally insufficient as a matter of law as additional possible grounds for the Court to order a new trial pursuant to Rule 33. In light of the collective weight of the evidence as a whole, and the collective weight of the defendant's arguments for a new trial, the Court finds no manifest injustice in the jury's verdicts as to any of the counts of conviction, the jury's findings as to drug quantities, or that the defendant was on federal pretrial supervision when he committed the crimes of which he was found guilty.  The defendant's motion for a new trial pursuant to Rule 33 is therefore denied.

## CONCLUSION

For the reasons stated above, the motions of the defendant, Tyrone Pennick, for a judgment of acquittal, for a new trial, and for various disclosure orders and an evidentiary hearing in furtherance of his motion to dismiss the Indictment for outrageous government conduct, Dkt. Nos. 105, 121, are denied.  The parties will be scheduled by Text Order to appear to inform the Court whether a sentencing hearing will be necessary and to schedule the hearing or sentencing.

**IT IS SO ORDERED.**


_____*s/Richard J. Arcara*_____
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated:  August 13, 2020